# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MELISSA MCCABE,

          Plaintiff,

v.

HEID MUSIC COMPANY, INC.,

          Defendant.

Case No. 23-CV-1215-JPS

**ORDER**

## 1. INTRODUCTION

In September 2023, Plaintiff Melissa McCabe ("Plaintiff") sued Defendant Heid Music Company, Inc. ("Defendant") for allegedly failing to "make its digital properties accessible to legally blind individuals" in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189. ECF No. 1 at 1. As relief, Plaintiff seeks a declaratory judgment that "at the commencement of the action Defendant was in violation of" the ADA, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), costs and reasonable attorneys' fees, and nominal damages. *Id.* at 15–16.

Despite proper service of process, ECF No. 6, Defendant failed to appear to defend against the action. Plaintiff requested entry of default, which the Clerk of Court entered in November 2023. ECF Nos. 7, 8. Now before the Court is Plaintiff's motion for default judgment. For the reasons discussed herein, the Court will grant the motion and will enter default judgment and a permanent injunction against Defendant.

## 2. FACTS[1]

Plaintiff is, and at all times relevant has been, legally blind and is therefore a member of a protected class under the ADA. Plaintiff uses screen reader technology such as Voice-Over and ZoomText to navigate the Internet.

Defendant, a Wisconsin corporation, is in the business of selling and distributing musical instruments and related products, including to residents of Wisconsin. Defendant constitutes a place of public accommodation under the ADA because it is a "sales or rental establishment" and/or "other service establishment." Consumers may purchase Defendant's products and access related content and services on Defendant's website located at https://www.heidmusic.com (the "Digital Platform"). Defendant owns, operates, and controls the Digital Platform and is responsible for the policies and procedures concerning its development and maintenance. The Digital Platform enables consumers to contact customer service by phone, email, and text message; to sign up to receive product updates, news, and promotions; to review important legal notices like Defendant's privacy policy; and to connect with Defendant on various social media platforms.

Plaintiff alleges that the Digital Platform is not, and has never been, fully accessible to her as a legally blind person and that Defendant does not

---

[1] All facts relevant to this Order are drawn solely from the complaint. ECF No. 1; *see Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020) (noting that, for purposes of default judgment, court must accept complaint's factual allegations as true, except those relating to damages) (citing Fed. R. Civ. P. 8(b)(6) and *Quincy Bioscience, LLC v. Ellishbrooks*, 957 F.3d 725, 725 (7th Cir. 2020)). Internal citations have been omitted for brevity.

have adequate policies reasonably calculated to make its digital properties accessible. On an undisclosed date, Plaintiff attempted to purchase a violin from the Digital Platform but was unable to complete the purchase due to the Digital Platform's inaccessibility. Specifically, the Digital Platform was not compatible with screen access/reader programs. For example, there are three red buttons near the top of the Digital Platform's homepage entitled "Ready to Rent?", "Current Renters," and "Need Teacher-Recommended Accessories," but when the screen-reader focus arrives on each button, they are announced simply as "button." This is also true of various other buttons on the Digital Platform. The lack of descriptive labels prevents the screen-reader from successfully navigating and comprehending the information on the Digital Platform. As another example, the "Rental Information" page displays the "2023 Band Rental Flyer," which contains pricing and rental information. However, the flyer is available only as an unlabeled image and is therefore inaccessible to screen-reader users such as Plaintiff.

The Digital Platform's inaccessibility with screen reader/access programs denies Plaintiff full and equal access to the services offered by and through the Digital Platform and deters her from using it. Notwithstanding that deterrence, Plaintiff intends to access the Digital Platform in the future to purchase the products and services offered, or to test the Digital Platform for ADA compliance. According to Plaintiff, removal of the barriers to her access is readily available and can be carried out "without much difficulty or expense."

3. **LAW AND ANALYSIS**

When a defendant has defaulted, the Court must accept all the allegations in the complaint as true, except those relating to damages. *See supra* note 1; *In re Catt,* 368 F.3d 789, 793 (7th Cir. 2004) ("Once the default

is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks.").

### 3.1 Jurisdiction

"Before the court can consider entering judgment, . . . it must be satisfied that subject matter jurisdiction exists over this lawsuit." *Abele v. Abele*, No. 21-cv-370-wmc, 2021 U.S. Dist. LEXIS 140621, at *2 (W.D. Wis. July 28, 2021) (citing *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit.")). Subject-matter jurisdiction exists in this case. Plaintiff sues under the ADA and therefore invokes federal question jurisdiction.

The Court is also satisfied that it has personal jurisdiction over Defendant. *See e360 Insight v. Spamhouse Project,* 500 F.3d 594, 598 (7th Cir. 2007) ("Default judgments rendered without personal jurisdiction are void . . . .") (collecting cases). Defendant was served in Wisconsin, is incorporated in Wisconsin, and purposefully and consistently conducts the sale of products and services to customers in Wisconsin. Accordingly, the Court may exercise personal jurisdiction over Defendant. *See Kurt v. Platinum Supplemental Ins., Inc.,* No. 19-C-4520, 2021 U.S. Dist. LEXIS 136737, at *19 (N.D. Ill. July 22, 2021) ("A court has general jurisdiction over 'any and all claims' brought against a corporation if it is . . . domiciled in the forum—i.e., it is incorporated or maintains its principal place of business in the forum . . . .") (quoting *Ford Motor Co. v. Mont. Eighth Judicial Dist.*, 141 S. Ct. 1017, 1024 (2021) and citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).

**3.2 Standing**

Out of an abundance of caution, the Court will also assure itself that Plaintiff has standing to bring this suit and to seek prospective injunctive relief. Actions such as these, in which the Plaintiff alleges an "inten[tion] to . . . access the" allegedly inaccessible forum (here, the Digital Platform) in the future "to test [it] for compliance with the ADA" may present issues of standing. ECF No. 1 at 13. For example, in *Carello v. Aurora Policeman Credit Union*, the Seventh Circuit affirmed a dismissal for lack of standing in a suit in which the plaintiff was indisputably a "tester:" one who "visits websites *solely* for the purpose of testing compliance with the [ADA]," a status which "does not automatically confer" standing. 930 F.3d 830, 832–33 (7th Cir. 2019) (emphasis added). The court affirmed dismissal for lack of standing in that case because the plaintiff "[wa]s not eligible for," and had "expressed [no] interest in," actually utilizing the allegedly inaccessible website to access the defendant business's services. *Id.* at 832. The plaintiff was, for a neutral and legal reason, barred from using the defendant business's services, and so its "failure to accommodate [him as a legally blind person] c[ould not] affect him personally," such that he lacked standing to maintain the suit. *Id.* at 834.

"Because she seeks prospective injunctive relief, [Plaintiff] must . . . allege a 'real and immediate' threat of future ADA violations." *Colon v. HY Supplies, Inc.,* No. 22 CV 5915, 2023 U.S. Dist. LEXIS 204526, at *14 (N.D. Ill. Nov. 15, 2023) (citing *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013)). In other words, she must "allege that the discrimination will continue and injure her in the future." *Id.* (citing *Scherr*, 703 F.3d at 1074). "This threat of future injury can be shown by an intent to return to or use the public accommodation . . . ." *Id.* (citing *Scherr*, 703 F.3d at 1074).

This case does not present the same standing issue as *Carello*. In addition to allegedly intending to check the website in the future for ADA compliance, Plaintiff also alleges that she "intends to attempt to access the Digital Platform in the future to purchase the products and services the Digital Platform offers." ECF No. 1 at 13. Unlike in *Carello*, she has expressed an actual intention to utilize/access Defendant's services through the Digital Platform in the future, and there is no indication here that, apart from the Digital Platform's alleged inaccessibility, she would otherwise be unable to do so. *Id.* She has sufficiently alleged that Defendant's alleged ADA violations "affect h[er] personally" and that "the discrimination will . . . injure her in the future," so the Court is satisfied that she has standing. *Carello*, 930 F.3d at 834; *Colon*, 2023 U.S. Dist. LEXIS 204526, at *4 (citing *Scherr*, 703 F.3d at 1074).

### 3.3 Liability

"Even after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." *Quincy Bioscience, LLC v. Bryk Enter., LLC*, No. 22-CV-658-JDP, 2023 U.S. Dist. LEXIS 65712, at *8 (W.D. Wis. Apr. 13, 2023) (quoting 10A Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.)). The Court therefore begins by analyzing whether the allegations in the complaint, taken as true, state a claim for relief under Title III of the ADA, 42 U.S.C. § 12181 et seq.

42 U.S.C. § 12182(a) provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." To state a Title III ADA discrimination claim, a plaintiff must allege that: "(1) she is disabled

Page 6 of 20
Case 2:23-cv-01215-JPS   Filed 03/19/24   Page 6 of 20   Document 11

within the meaning of the ADA; (2) defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) defendant discriminated against her by denying her the full and equal opportunity to enjoy the services the defendant provides." *Morey v. McDonald's Corp.*, No. 18 C 1137, 2018 U.S. Dist. LEXIS 240851, at *10 (N.D. Ill. Nov. 26, 2018) (quoting *Thomas v. Kohl's Corp.*, No. 17 C 5857, 2018 U.S. Dist. LEXIS 18218, at *7 (N.D. Ill. Feb. 5, 2018) and citing 42 U.S.C. § 12182(a)).

The first element presents a question of law for the court, and the Court is satisfied that it is met. *See Alitovski v. Elgin Corrugated Box Co.,* No. 99 C 5018, 2001 U.S. Dist. LEXIS 2070, at *8–9 (N.D. Ill. Feb. 21, 2001) (citing *Bragdon v. Abbott*, 524 U.S. 624 (1998)). Plaintiff has alleged that she is legally blind and therefore disabled within the meaning of the ADA. ECF No. 1 at 4. A disabled person under the ADA is one with a "physical or mental impairment that substantially limits one or more major life activities" of the individual. 42 U.S.C. § 12102. Legal blindness is recognized as a disability under the ADA. *See Colon*, 2023 U.S. Dist. LEXIS 204526, at *14.

Next, Plaintiff must show that Defendant "is a private entity that owns . . . or operates a place of public accommodation . . . ." *Morey*, 2018 U.S. Dist. LEXIS 240851, at *10 (quoting *Thomas*, 2018 U.S. Dist. LEXIS 18218, at *7 and citing 42 U.S.C. § 12182(a)). Plaintiff argues that "the Seventh Circuit has interpreted websites to be places of public accommodation, consistent with the Department of Justice's position," although Plaintiff does not actually cite to any Seventh Circuit case in support of the proposition. ECF No. 10 at 9 (citing Letter from Assistant Attorney Gen., Stephen E. Boyd, to Congressman Ted Budd (Sep. 25, 2018) [https://perma.cc/CH6G-PSFB] and *Wright v. Thread Experiment, LLC*, No.

1:19-cv-01423-SEB-TAB, 2021 U.S. Dist. LEXIS 13214 (S.D. Ind. Jan. 22, 2021)). Notwithstanding her lack of citation, Plaintiff is correct.

Various circuits have determined that "a place of public accommodation must be a physical space." *Colon*, 2023 U.S. Dist. LEXIS 204526, at *8 (citing *Magee v. Coca-Cola Refreshments, Inc.*, 833 F.3d 530, 534 (5th Cir. 2016), *cert. denied*, 583 U.S. 814 (2017); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114–15 (9th Cir. 2000); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613–14 (3d Cir. 1998); and *Parker v. Metro Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997)). The Seventh Circuit is not among them. *See Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site . . . but we have already rejected that interpretation. An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store.") (collecting cases); *see also Wright*, 2021 U.S. Dist. LEXIS 13214, at *6 (concluding that defendant's website for sale of products and access to other business-related content constituted a place of public accommodation for purposes of the ADA). Accordingly, this second element is met; Defendant operates the Digital Platform, which constitutes a place of public accommodation in this circuit.

Third, Plaintiff must allege that "[D]efendant discriminated against her by denying her the full and equal opportunity to enjoy the services [D]efendant provides." *Morey*, 2018 U.S. Dist. LEXIS 240851, at *10 (quoting *Thomas*, 2018 U.S. Dist. LEXIS 18218, at *7 and citing 42 U.S.C. § 12182(a)). "[D]iscrimination under Title III . . . includes 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, advantages, or

accommodations to individuals with disabilities . . . .'" *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1037 (7th Cir. 2021) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)). It also includes a "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services," unless the defendant demonstrates that such modifications or steps would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii). "'Auxiliary aids and services' includes 'qualified readers . . . or other effective methods of making visually delivered materials available to individual impairments,' including the use of screen readers . . . ." *Vargas v. Quest Diagnostics Clinical Lab'ys, Inc.*, No. 19-8108-DMG (MRWx), 2023 U.S. Dist. LEXIS 178397, at *24 (C.D. Cal. Sept. 29, 2023) (quoting 42 U.S.C. § 12103(1)(B)–(C) and citing 28 C.F.R. §§ 36.303(b)(2)–(3)).

      Plaintiff alleges that she was discriminated against in violation of the ADA by Defendant's failure to ensure that the Digital Platform was compatible with screen reader software such that legally blind individuals like herself can enjoy access to the Digital Platform. ECF No. 10 at 10 ("As a result of the incompatibility [of the Digital Platform with screen reader software], Plaintiff was unable to complete her transaction and was therefore denied full and equal access to . . . [Defendant's] services . . . ."). These allegations suffice for purposes of this final element. *Wright,* 2021 U.S. Dist. LEXIS 13214, at *8 ("Plaintiff was deprived of equal enjoyment of the goods and services provided through [the website] because of Defendant's failure to ensure that its website is accessible to individuals with vision impairments.") (citations omitted); *Colon*, 2023 U.S. Dist. LEXIS 204526, at *14 (denying motion to dismiss in Title III ADA case in which the plaintiff

"allege[d] that she was denied full and equal access to the services [that the defendant] offer[ed] because [its] website [wa]s not properly formatted to allow blind users to access its digital content").

In light of the foregoing, the Court concludes that Plaintiff's complaint sufficiently alleges a legitimate cause of action under Title III of the ADA such that default judgment is appropriate. The Court will accordingly enter default judgment against Defendant.

### 3.4 Relief

#### 3.4.1 Nominal Damages

Plaintiff seeks to recover nominal damages. ECF No. 1 at 16. Plaintiff cites to no authority in support of the notion that she can recover nominal damages under Title III of the ADA.

The Court's review of relevant authority leads it to conclude that nominal damages are not available to Plaintiff. Monetary damages as a general category are not available to Title III ADA plaintiffs. *Mortland v. Radhe Hosp. LLC*, No. 1:22-cv-00366-HAB-SLC, 2023 U.S Dist. LEXIS 86204, at *8–9 (N.D. Ind. Apr. 12, 2023) ("A plaintiff cannot seek damages under Title III of the ADA, only injunctive relief.") (citing *Scherr*, 703 F.3d at 1075–76; *Mortland v. Castle Hosp., LLC*, No. 21-1351, 2022 U.S. Dist. LEXIS 149770, at *21–22 (W.D. Penn. Aug. 22, 2022); and *Mortland v. Lights out Devs.*, No. 1:19-cv-2557-JMS-DLP, 2020 U.S. Dist. LEXIS 115218, at *5 (S.D. Ind. July 1, 2020)). That general category includes nominal damages. *Whitaker v. Tesla Motors, Inc.*, No. 4:21-CV-3135-YGR, 2021 U.S. Dist. LEXIS 187227, at *1–2 (N.D. Cal. Sept. 29, 2021) (granting motion to dismiss plaintiff's request for nominal damages under Title III of ADA); *Brooke v. Bhakta*, No. 2:17-cv-2663-HRH, 2017 U.S. Dist. LEXIS 193432, at *3 (D. Ariz. Jan. 21, 2017)

(declining to conclude that nominal damages are available in a Title III ADA case).

In light of the foregoing, and in the absence of any argument from Plaintiff that recovery of nominal damages is authorized by the ADA, the Court will deny Plaintiff's request for nominal damages.

### 3.4.2 Injunctive Relief

Plaintiff also seeks various forms of prospective injunctive relief. Specifically, Plaintiff seeks injunctive relief requiring Defendant, "and all persons and entities in privity, combination, participation[,] or acting in concert with Defendant" to "take the following steps necessary to bring [the Digital Platform] into full compliance with the requirements set forth in the ADA and its implementing regulations:"

> (a) retain, at its expense, ADASure ("Mutually Agreed Upon Consultant"), who shall assist Defendant in improving the accessibility of its Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA") by conducting: (1) an accessibility audit on critical use paths within https://www.heidmusic.com/ for conformance with WCAG 2.0 (AA) standards; (2) a 2-day onsite combined Developer/QA training session; and (3) monthly testing for a period of two years after the Mutually Agreed Upon Consultant verifies Defendant's website conforms with WCAG 2.0 (AA) in a Letter of Conformance;
>
> (b) work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;
>
> (c) work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a monthly basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

(d) work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

(e) incorporate all of the Mutually Agreed Upon Consultant's recommendations within sixty (60) days of receiving the recommendations;

(f) directly link from the footer on each page of the Website a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Website;

(g) work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll-free phone number to report accessibility-related problems;

(h) provide a notice, prominently and directly linked from the footer on each page of the Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

(i) provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

(j) train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Defendant shall have trained no fewer than three of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for

> promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance; and
>
> (k) modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology.

ECF No. 10 at 15–17.

Availability of remedies for violations of Title III of the ADA is governed by 42 U.S.C. § 2000a-3(a). *See* 42 U.S.C. § 12188. Section 2000a-3(a) provides that a person seeking relief for a violation of Title III of the ADA may seek "a permanent or temporary injunction."

> "To demonstrate that injunctive relief is appropriate,"
>
> Plaintiff must show that: (1) [s]he has suffered an irreparable injury; (2) remedies at law, such as monetary damages, are insufficient to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

*Wright*, 2021 U.S. Dist. LEXIS 13214, at *9 (citing *LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 944 (7th Cir. 2019), *cert denied*, 140 S. Ct. 58 (2019)). In the ADA context specifically, she must also show that "it is reasonable to infer from her complaint that th[e] discriminatory treatment will continue" and, as the Court already concluded she has shown, *see supra* Section 3.2, that she "intends to return to the public accommodation in the future." *Scherr*, 703 F.3d at 1074 (quoting *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)) (internal bracketing omitted).

Plaintiff must first demonstrate that she has suffered an irreparable injury. She has done so; taking her factual allegations as true, as the Court

Page 13 of 20
Case 2:23-cv-01215-JPS   Filed 03/19/24   Page 13 of 20   Document 11

must at this juncture, Plaintiff has demonstrated that she was deprived of equal access to Defendant's services via the Digital Platform in violation of Title III of the ADA and that she will continue to be so deprived in the absence of an injunction because she intends to attempt to access Defendant's business offerings in the future via the Digital Platform. *See supra* Sections 3.2, 3.3. This constitutes an irreparable injury for permanent injunction purposes. *See Wright,* 2021 U.S. Dist. LEXIS 13214, at *10 (imposing permanent injunction in analogous factual scenario); *see also Hinders v. Shiva 3, Inc.,* No. 2:19-CV-03080, 2022 U.S. Dist. LEXIS 44458, at *8–10 (C.D. Ill. Mar. 14, 2022) (finding that "Plaintiff has suffered an irreparable injury" in ADA case in conjunction with granting of default judgment on ADA claim).

The second element is also met; remedies at law are insufficient to compensate Plaintiff for the injury because, as noted *supra* Section 3.4.1, recovery of damages is unavailable to Plaintiff under Title III of the ADA. *See Wright,* 2021 U.S. Dist. LEXIS 13214, at *10 ("Without a monetary remedy available, no recourse is available to Plaintiff absent the entry of an injunction . . . .") (citing *LAJIM*, 917 F.3d at 945).

The Court can also conclude that, considering the balance of hardships between the parties, a remedy in equity is warranted. Plaintiff suffered, and will continue to suffer, the hardship of being unable to access Defendant's Digital Platform and, subsequently, an inability to patronize the Defendant business to the same degree as those individuals not falling within the protection of the ADA. Meanwhile, Defendant will merely have to "incur[] certain costs necessary to bring [the Digital Platform] into compliance with the ADA," "something required of all businesses with

Page 14 of 20
Case 2:23-cv-01215-JPS   Filed 03/19/24   Page 14 of 20   Document 11

public accommodations under the ADA." *Wright,* 2021 U.S. Dist. LEXIS 13214, at \*10; *Hinders,* 2022 U.S. Dist. LEXIS 44458, at \*10.

The Court also concludes that the public interest would not be disserved by imposition of a permanent injunction in this case. "[T]he public has a strong interest in eliminating discrimination and in enforcing the ADA . . . ." *Wright,* 2021 U.S. Dist. LEXIS 13214, at \*10 (quoting *Lights out Devs.*, 2020 U.S. Dist. LEXIS 115218, at \*7 and citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)). The Court is therefore satisfied that Plaintiff has demonstrated that injunctive relief is appropriate in this case.

Additionally, the Court concludes that "it is reasonable to infer from [Plaintiff's] complaint that th[e] discriminatory treatment will continue" in the absence of an injunction. *Scherr*, 703 F.3d at 1074. Plaintiff put Defendant on notice of its violations as discussed herein, and Defendant opted neither to defend itself against the allegations nor to alleviate the violations. It is therefore clear that Defendant's discriminatory treatment as discussed herein will continue in the absence of a Court order enjoining such treatment.

Finally, the Court must assure itself that the injunctive relief sought is appropriately tailored to address the violation in this case. *See Nat'l Org. for Women, Inc. v. Scheidler*, 396 F.3d 807, 817 (7th Cir. 2005), *rev'd on other grounds*, 547 U.S. 9, 23 (2006). The Court concludes that the sought injunctive relief is appropriately tailored, with one slight exception: the Court will revise subsection (d) as provided above to read: "work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with *visual* disabilities to evaluate whether

Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis." (emphasis added).[2]

As revised, the injunctive relief Plaintiff seeks is narrowly tailored to addressing the specific violation addressed herein: the Digital Platform's inaccessibility to those with visual disabilities. Defendant will not be later heard to complain if it finds the injunction herein sought and imposed to be too burdensome; if Defendant wished to oppose the scope of the injunction, then it should have appeared to defend itself in this action.

### 3.4.3 Declaratory Relief

In her complaint, Plaintiff additionally seeks a declaratory judgment that

> at the commencement of this action, [Defendant] was in violation of Title III of the ADA and its implementing regulations in that [Defendant] took no action that was reasonably calculated to ensure that [the Digital Platform] is fully accessible to and independently usable by blind individuals.

ECF No. 10 at 14; *see also* ECF No. 1 at 15. Plaintiff does not discuss why she is entitled to declaratory relief. For the reasons provided herein, the Court will deny Plaintiff's request for declaratory judgment.

"[T]he purpose of a declaratory judgment is to allow the parties to understand their rights and liabilities so that they can adjust their future action to avoid unnecessary damages" in future litigation. *Freeman v. Wexford of Ind. LLC*, No. 3:20-CV-631, 2022 U.S. Dist. LEXIS 177248, at *12

---

[2]The Court makes this revision because the issue of whether the Digital Platform is inaccessible to individuals with other, non-vision related disabilities is not before the Court. *See Bowles v. Montgomery Ward & Co.,* 143 F.2d 38, 42 (7th Cir. 1944) ("[O]rdinarily, . . . an injunction [should not] be broader than the illegal acts or practices charged or proven.").

(N.D. Ind. Sept. 28, 2022) (quoting *Ford v. Lane*, 714 F. Supp. 310, 314 (N.D. Ill. 1989)). "[D]eclaratory relief is inappropriate where a private plaintiff seeks relief for discriminatory acts that have already occurred." *Marquez v. Riveredge Hosp., Inc.*, No. 21-CV-3369, 2022 U.S. Dist. LEXIS 49093, at *15–16 (N.D. Ill. Mar. 21, 2022) (citing *Est. of Wobschall v. Ross*, 488 F. Supp. 3d 737, 745 n.1 (E.D. Wis. 2020) and *Field v. Hous. Auth. of Cook Cnty.*, No. 17-cv-02044, 2018 U.S. Dist. LEXIS, at *23–24 (N.D. Ill. Aug. 13, 2018)). "[A] declaration that [the defendant] violated the ADA . . . would do nothing to clarify the legal relations between the parties for any *future* litigation because [the plaintiff] is already pursuing claims against [the defendant]. . . under the ADA . . . in the instant lawsuit." *Field*, 2018 U.S. Dist. LEXIS, at *24 (emphasis added).

Although Plaintiff has alleged that she will continue to be injured prospectively by Defendant's conduct, the declaratory relief she seeks is tailored solely to addressing past conduct. Her request for declaratory judgment is therefore inappropriate. *Marquez,* 2022 U.S. Dist. LEXIS 49093, at *16 ("To the extent that [the plaintiff's] request for a declaration regarding [the defendant's] denial of access to its . . . services relates to events that have already occurred, granting the request would not prevent the accrual of avoidable damages or otherwise clarify the legal relations between the parties.") (citing *Est. of Wobschall*, 488 F. Supp. 3d at 745 n.1 and *Field*, 2018 U.S. Dist. LEXIS 13684, at *23–24). Accordingly, and in the absence of actual argument from Plaintiff on the propriety of the declaratory relief sought, the Court will deny Plaintiff's request for declaratory judgment.

### 3.4.4 Costs and Reasonable Attorneys' Fees

Plaintiff additionally seeks to recover her costs of suit and reasonable attorneys' fees. ECF No. 1 at 15–16. This is appropriate. "[T]he ADA states

that a court may award 'a reasonable attorney's fee, including litigation expenses, and costs . . . .'" *Lange v. City of Oconto*, 28 F.4th 825, 849 (7th Cir. 2022) (quoting 42 U.S.C. § 12205) (emphases omitted). Plaintiff may submit a fee petition for the Court's review on or before **April 18, 2024**, accompanied by appropriate documentary evidence. *See Wright,* 2021 U.S. Dist. LEXIS 13214, at *12 ("Plaintiff, as the prevailing party, may file a petition for costs and fees . . . ."). Because fees and costs do not affect the substance of the judgment and "may not . . . delay[]" entry of judgment, the Court will direct that default judgment be entered simultaneously with this Order. Fed. R. Civ. P. 58(e).

### 4. CONCLUSION

In light of the foregoing, the Court concludes that Plaintiff's allegations in the complaint are sufficient to state a cognizable claim for relief under Title III of the ADA. Further, the Court concludes that Plaintiff is entitled to the prospective injunctive relief she seeks, with one minor revision as noted *supra* Section 3.4.2. Plaintiff is not entitled to recover nominal damages. She is, however, entitled to recover costs and reasonable attorney's fees.

Lastly, the Court addresses Plaintiff's request that the Court "retain jurisdiction for a period of (two) years after the date on which the Mutually Agreed Upon Consultant validates [that] the [Digital Platform] is free of accessibility errors/violations" so that the Court can "ensure [that Defendant] has adopted and implemented adequate accessibility maintenance policies." ECF No. 10 at 17. The Court will grant that request and order that this case be administratively closed in the meantime. *See Whitford v. Gill,* No. 15-cv-421-bbc, 2017 U.S. Dist. LEXIS 94849, at *2 (W.D. Wis. Feb. 23, 2017) ("A court possesses 'the independent authority to

enforce its own injunctive decrees.' . . . . The rule is that when 'an equity case ends in a permanent injunction, the trial court, with or without an explicit reservation of jurisdiction, retains jurisdiction to enforce the injunction . . . .'") (quoting *S.E.C. v. Homa*, 514 F.3d 661, 673 (7th Cir. 2008) and *McCall-Bey v. Franzen*, 777 F.2d 1178, 1183 (7th Cir. 1985)).

Accordingly,

**IT IS ORDERED** that Plaintiff Melissa McCabe's motion for default judgment, ECF No. 9, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that default judgment be **ENTERED** in favor of Plaintiff Melissa McCabe;

**IT IS FURTHER ORDERED** that Plaintiff Melissa McCabe is **ENTITLED** to permanent injunctive relief on the terms set forth in this Order, and which will be entered by separate contemporaneous filing;

**IT IS FURTHER ORDERED** that this Court will **RETAIN jurisdiction** of this matter for a period of **two years** from the date on which the Mutually Agreed Upon Consultant validates that the Digital Platform is free of accessibility errors/violations to ensure that Defendant has adopted and implemented adequate accessibility maintenance policies, *see supra* Section 4;

**IT IS FURTHER ORDERED** that Plaintiff shall **FILE** a notice/status update on the docket when the Mutually Agreed Upon Consultant has validated that the Digital Platform is free of accessibility errors/violations so that the Court may ascertain when the two-year period for retaining jurisdiction begins;

**IT IS FURTHER ORDERED** that Plaintiff may submit a petition for her reasonable attorney's fees accrued up to this point, if at all, on or before **April 18, 2024**. Plaintiff may submit an additional petition for reasonable

attorney's fees accrued in monitoring Defendant's compliance with the prospective injunction granted herein and entered by separate order, if at all, within fourteen days of the Court's final dismissal of this case following the two-year retention of jurisdiction; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **ADMINISTRATIVELY CLOSED.**

The Clerk of Court is directed to enter default judgment accordingly.

Dated at Milwaukee, Wisconsin, this 19th day of March, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge